IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Criminal No. 1:23-CR-00162 (RDA) |
| ) | |
| JUAN CARLOS AREVALO, III, ) | |
| ) | |
| Defendant.  ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America respectfully submits its position with respect to the sentencing of the defendant, Juan Carlos Arevalo, III.  The defendant's sentencing hearing is scheduled for December 13, 2023, at 11:00 a.m.

On November 1, 2023, the defendant pleaded guilty to a one-count criminal information charging him with conspiracy to commit bribery and honest services wire fraud.  ECF No. 7.  The defendant admitted that he and others engaged in a bribery and procurement fraud scheme while the defendant was a high-ranking government contractor and chief technologies officer with the United States Air Force ("USAF").

The parties and the United States Probation Office ("USPO") agree that the defendant's advisory guidelines range should be calculated as follows:  (1) the defendant's base offense level is 14 pursuant to U.S.S.G. § 2C1.1(a)(1) (Bribery); (2) the defendant's offense level should be increased 10 levels pursuant to U.S.S.G. § 2C1.1(b)(2) based on a loss amount that is focused on the $185,000 that the defendant received from a co-conspirator, Julio R. ("Jace") Sotomayor.  *See* Presentence Investigative Report ("PSR") ¶¶ 63-73.  The government and the defendant disagree as to whether two levels should be applied under U.S.S.G. § 2C1.1(b)(1) because the

offense involved more than one bribe.  The USPO concurs with the government's position on this disputed issue.  PSR ¶ 64.

Although the defendant has serious state-level charges pending against him (*id.* ¶ 79), he has not yet been convicted of those offenses.  The defendant's criminal history is therefore Category I, and he is entitled to a two-level reduction pursuant to U.S.S.G. § 4C1.1.  PSR ¶ 70.  Both the government and the USPO agree that the defendant's total offense level, when also including a three-level reduction for acceptance of responsibility, is Level 21 (37-46 months).  *Id.* ¶¶ 63-73, 118-19.

For the reasons set forth below, the government recommends that the Court impose a sentence reflecting the seriousness of the offense, the nature and personal characteristics of the defendant, and the need to deter others and promote respect for the law.  In addition, because the defendant's co-conspirator, Sotomayor, received only a six-month term of imprisonment that was far below his applicable guidelines range (and the government's recommendation of 37 months), there is now a need to avoid an unwarranted sentencing disparity in this instance.  *See* 18 U.S.C. § 3553(a)(6).  Sotomayor participated in four distinct bribery and fraud schemes and is more culpable than the defendant when looking at the totality of the circumstances.

## **BACKGROUND**

According to the statement of facts and the PSR, from late 2013 to late 2019, the defendant served as the chief technologies officer and senior technical consultant for a USAF component that focuses on intelligence, surveillance, reconnaissance, and innovation.  The defendant worked closely with senior USAF officials in the Pentagon and helped them to design, develop, and deliver various military technologies.  ECF No. 9 at ¶ 1; PSR ¶ 13.

Sotomayor is a retired USAF colonel who was the owner of two consulting firms—Eagle Market Group (EMG) and Federal Security Agency (FSA)—and the minority owner of a government contracting firm ("Company B"). Beginning in late 2013, Sotomayor and the contracting firm's majority owner ("Person B") sought to provide services to the USAF to support various technology projects and initiatives. As part of this objective, the defendant and Sotomayor agreed to engage in a corrupt, multi-year scheme in which Sotomayor, through EMG, paid $185,000 to the defendant using his relative ("Person A") as a pass-through intermediary. In exchange for these payments, the defendant agreed to perform and did perform official acts, and sought to influence other officials, to benefit Sotomayor, the firm, and Person B. ECF No. 9 at ¶¶ 2, 6-16; PSR ¶¶ 14, 18-28.

Beginning in late 2014, Sotomayor also engaged in a similar pass-through bribery scheme with a former federal contracting officer, Diane Sturgis, by using EMG to pay $150,000 to Sturgis's relative in exchange for official acts regarding the same USAF technology contract. *See* ECF Nos. 1, 34, *United States v. Sotomayor*, No. 1:22-cr-0122 (E.D. Va.) (RDA). Through early 2020, Company B had received approximately $51.6 million from the USAF of which at least $5.9 million was paid to Sotomayor.[1] ECF No. 9 at ¶¶ 9-10; PSR ¶¶ 21-22.

---

[1] In addition to these two bribery schemes, Sotomayor has admitted to participation in two fraud schemes. First, between early 2015 and mid-2019, Sotomayor and others defrauded the United States by submitting invoices from Company B to the USAF that included requests to pay government servicing fees that were supposed to be for the BBG. Substantial portions of the government servicing fees were not used for the benefit of the BBG; instead, the funds were paid to Sotomayor. *See* ECF No. 34 at 15 (¶ 76); PSR ¶ 109, *United States v. Sotomayor*, No. 1-22-cr-0122 (RDA). Second, Sotomayor engaged in a scheme involving another government contracting firm in Virginia and its owners. The company, with Sotomayor's assistance, primarily received government contracts with the Defense Information Systems Agency ("DISA"). Sotomayor received compensation from the company in the form of payments to EMG or Sotomayor's spouse for providing program management services to the company related to the DISA contract. At the same time, Sotomayor was providing contract management

Sotomayor and Sturgis have pleaded guilty and were sentenced for their various schemes. On August 30, 2023, this Court sentenced Sotomayor to six months imprisonment followed by three years of supervised release (including two years of home confinement), and financial penalties totaling $605,000. This sentence included a significant downward variance over the government's objection. *See* ECF Nos. 45, 47, 51, 61, *United States v. Sotomayor*, No. 1:22-cr-0122 (E.D. Va.) (RDA). Sturgis has pleaded guilty to two schemes which, in total, resulted in a 30-month term of imprisonment and $55,000 in financial penalties. *See* ECF Nos. 18, 26, 27, *United States v. Sturgis*, No. 1:20-cr-158 (E.D. Va.); ECF Nos. 8, 20-23, *United States v. Sturgis*, No. 1:21-cr-292 (E.D. Va.). Both Sturgis and Sotomayor received cooperation credit.

## ARGUMENT

**I.     The Defendant's Base Offense Level Should Be Increased by Two Levels Because He Received Multiple Bribe Payments from Sotomayor**

The government and the USPO concur that the defendant's base offense level should be increased by two levels because he received multiple bribe payments. U.S.S.G. § 2C1.1(b)(1) and Application Note 2 indicate that a two-level adjustment should be included where there is more than one incident of bribery or extortion. *See United States v. Collins*, 426 F. App'x 161, 162 (4th Cir. 2011) (affirming this Court's application of § 2C1.1(b)(1) where public official received more than one bribe or extortion); *United States v. Harvey*, 532 F.3d 326, 337 (4th Cir. 2008) (two-level enhancement warranted where district court properly found that multiple bribes were paid). Conversely, "[r]elated payments that, in essence, constitute a single incident of bribery or extortion (*e.g.*, a number of installment payments for a single action) are to be treated as a single bribe." U.S.S.G. § 2C1.1 cmt. n.2.

---

services to the DISA and receiving payments to his consulting firm, FSA, for overlapping work on the same contract. *See id.* (ECF No. 34 at 15 (¶ 77); PSR ¶ 110).

4

The defendant will likely contend that the payments he received from Sotomayor involved installment payments on a fixed amount totaling $185,000. This argument, if raised, is mistaken both legally and factually. Legally, it does not matter whether the bribe payments were received as part of a single fraud scheme or multiple schemes to defraud. "Courts confronted with similar situations [as here] have uniformly held that multiple payments meant to influence more than one action should not be merged together for purposes of § 2C1.1 merely because they share a single overall goal or are part of a larger conspiracy to enrich a particular defendant or enterprise." *United States v. Arshad*, 239 F.3d 276, 281 (2d Cir. 2001) (collecting cases and upholding application of a two-level enhancement under § 2C1.1(b)(2) where the defendant pleaded guilty to a single bribery count involving an exchanged stream of benefits); *see also*, *e.g.*, *United States v. Grosso*, 658 F. App'x 43, 46 (3d Cir. 2016) (quoting *Arshad*); *United States v. Ring*, 811 F. Supp. 2d 359, 374 (D.D.C. 2011) ("Section 2C1.1(b)(1) speaks not of multiple 'schemes to defraud' but of multiple 'bribes.'"); *United States v. Mariano*, 316 F. App'x 99, 103 (3d Cir. 2008) (district court's application of § 2B1.1(b)(1) not clearly erroneous where evidence demonstrated that bribe payments were not installment payments for a single official act; rather, payments occurred intermittently in connection with different actions); *United States v. Rudolph*, 137 F.3d 173, 183 n.2 (3d Cir. 1998) (district court correctly applied § 2C1.1(b)(1) where the defendant accepted more than one payment for multiple immigration templates); *United States v. Martinez*, 76 F.3d 1145, 1153-54 (10th Cir. 1996) (upholding the more-than-one-bribe enhancement where the defendant, a marketing director at a hospital, paid a USPS official a monthly fee for patient referrals, noting that the official "received payments 'as long as both sides wanted to perform'"); *United States v. Kahlon*, 38 F.3d 467, 470 (9th Cir. 1994) (multiple "payments [that] were part of a larger conspiracy" can be the basis for an enhancement under

5

§ 2C1.1(b)(1), as long as they "were not installment payments for a single action"); *United States v. Evans*, 30 F.3d 1015, 1016-17, 1020 (8th Cir. 1994) (affirming district court's finding that multiple payment enhancement was warranted where defendant, a state insurance examiner, accepted bribes to approve two different insurance applications).

Factually, when determining if multiple payments constitute more than one bribe, courts do not focus on the number of victims or whether the bribe payments were made to one or more public officials. Instead, courts have considered: (1) whether "the payments were made to influence a single action," (2) whether "the pattern and amount of payments bear the hallmarks of installment payments, such as a regular schedule of payments over a finite period of time toward a fixed final sum, rather than a series of intermittent and varied bribes" and (3) whether "the method for making each payment remains the same[.]" *Arshad*, 239 F.3d at 281-82 (citations and quotation marks omitted); *see also*, *e.g.*, *United States v. Soumano*, 318 F.3d 135, 137 (2d Cir. 2003) (applying *Arshad* factors); *United States v. Ford*, 344 F. App'x 167, 170 (6th Cir. 2009) (same); *United States v. Weaver*, 175 F. App'x 506, 509-11 (3d Cir. 2006) (same); *United States v. Morales*, 11 F.3d 915, 917-18 (9th Cir. 1993) (suggesting that § 2C1.1(b)(1) factors include whether payments are made at varying intervals and amounts and are received from different sources or for disparate action); *Mariano*, 316 F. App'x at 103; *United States v. Goodson*, No. CRIM. 96-207-002, 2000 WL 680278, at *5 (E.D. La. May 25, 2000) (holding that multiple bribes occurred because they were "in different amounts and took different forms," such as a sham condominium rental and hidden interest in a company); *Vidal v. United States*, No. CIV.A. 05-988 (JAP), 2006 WL 2465417, at *6 (D.N.J. Aug. 22, 2006) (applying enhancement where the two instances of bribery were two years apart, varied in amount, and were made to influence separate actions).

Applying these factors here, the payments made to the defendant (through his relative) were not meant to influence a single action by the defendant. Nor did Sotomayor or the defendant agree upon a fixed amount of $185,000 to be paid in period installments. Instead, the defendant was placed on retainer to provide a series of official acts and preferential treatment using his lofty perch within the Pentagon. The defendant, in other words, did not agree to an installment plan relating to a single effort by the defendant to take or cause one official act, and the payments discontinued only because his access and ability to influence key decisionmakers was waning by the end of 2019. *See Soumano*, 318 F.3d at 137 (even though method of bribe payment was the same for two transactions, there was "no doubt" that multiple bribes occurred because "the two sums were not installments toward the payment of a larger, previously-agreed upon amount" and, in addition, they were "meant to influence two separate actions"); *Kahlon*, 38 F.3d at 470 (upholding the enhancement where the bribe payments were made "to promote different applications for work papers" and "were part of a larger conspiracy" but "not installment payments for a single action"); *Grosso*, 658 F. App'x at 46 (applying § 2C1.1(b)(1) where correctional officer (a) did not contend that two payments of $1,000 each were installments for a larger, previously agreed upon amount, and (b) took similar action (providing a cell phone and tobacco products) on two separate occasions in exchange for each payment).

Because the defendant admitted that he received a stream of benefits paid to him pursuant to a retainer theory, the Court should apply the two-level enhancement under U.S.S.G. § 2C1.1(b)(1). ECF No. 9 at ¶ 13.

## II.      A Substantial Sentence Is Warranted When Considering the Sentencing Factors

### A.      The Seriousness of the Offense Conduct and the Need for Deterrence

Given the seriousness of the offense conduct, the Court should send a strong deterrent message by imposing a substantial sentence. At Sotomayor's behest, the defendant breached the public trust bestowed upon him. Sotomayor corruptly provided him with bribe payments and, in exchange, the defendant agreed to perform official acts and provide preferential treatment to a contracting firm that received $51.6 million dollars in taxpayer money as a consequence. The defendant took steps to conceal his illegal activity with Sotomayor, including using personal e-mail accounts and using the defendant's relative as an intermediary. This scheme, along with the one that Sotomayor carried out with Sturgis, damaged and undermined the BBG and the USAF's reputations and their procurement integrity. It also gave Company B an unfair advantage.

The defendant had been a high-level contractor for nearly two decades, working closely with senior officials in the Department of Defense and the USAF. He was an entrusted advisor on critical programs, and he had access to the highest-ranking officials in the Pentagon. Sotomayor, likewise, served in the government for several decades before trading on his military contacts. Both the defendant and Sotomayor are undoubtedly aware that public service is a public trust, and that the defendant, who served a critical role in the implementation of the USAF's cutting-edge technologies, was required always to place loyalty to the Constitution, federal laws, and core principles of ethical conduct above private gain. With Sotomayor's assistance, the defendant sold out his position. The defendant did so out of greed and a desire for personal gain.

A significant term of imprisonment is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a). The Court's sentence should

adequately reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and adequately deter other officials and senior contractors from engaging in similar deceit and corruption.  Indeed, a key objective of sentencing those involved in corruption should be "to send a message . . . that [bribery] is a serious crime that carries with it a correspondingly serious punishment."  *See United States v. Kuhlman*, 711 F.3d 1321, 1328 (11th Cir. 2013); *see also United States v. Morgan*, Nos. 13-6025, 13-6052, 635 F. App'x 423, 2015 WL 6773933, at *22 (10th Cir. Nov. 6, 2015) ("Deterrence is a crucial factor in sentencing decisions for economic and public corruption crimes."); *id.* (reversing and remanding for resentencing five-year probationary sentence for elected official engaged in bribery who had an advisory guideline range of 41 to 51 months; noting that it is difficult to discern "how a non-custodial sentence would deter public officials from soliciting bribes," because, among other reasons, "[g]eneral deterrence comes from a probability of conviction and significant consequences").

      The need for general and specific deterrence is also a prominent factor when sentencing white-collar defendants engaged in fraud schemes.  *See, e.g.*, *United States v. Hoffman*, 901 F.3d 523, 557 (5th Cir. 2018) (reversing a no jail sentence in a white-collar fraud case as substantively unreasonable: "[W]e have repeatedly expressed a distaste for sentencing that reflects different standards of justice being applied to white and blue collar criminals."); *United States v. Howard*, 28 F.4th 180, 218-19 (11th Cir. 2022); *United States v. Sample*, 901 F.3d 1196, 1199-1200 (10th Cir. 2018) (probationary sentence for white-collar defendant was substantively unreasonable; citing cases); *United States v. Musgrave*, 761 F.3d 602, 608-09 (6th Cir. 2014) (vacating sentence for white-collar defendant: "Consideration of general deterrence is particularly important where the district court varies substantially from the Guidelines. . . .  This is even truer

9

here, given that the crimes of which Musgrave was convicted are especially susceptible to general deterrence and the fact that there is a general policy favoring incarceration for these [white-collar] crimes." (internal marks and citations omitted)).

Here, the defendant and Sotomayor engaged in serious misconduct involving public corruption and procurement fraud. There is a strong need for both specific and general deterrence in this instance.

### B. The Need to Avoid Unwanted Sentencing Disparities

A sentencing court should also weigh whether its judgment will result in an unwarranted sentencing disparity. *See* 18 U.S.C. § 3553(a)(6). This factor is more prominent in situations such as this when there are convicted conspirators or related defendants whose cases arise from the same operative facts.

During Sotomayor's sentencing hearing, the Court imposed a term of imprisonment of six months, which reflected a substantial variance from the guidelines. Specifically, the Court applied Level 19 (30-37 months) after it rejected the government and the USPO's application of a four-level enhancement pursuant to U.S.S.G. § 2C1.1(b)(3). *See* ECF Nos. 51, 61, 62, *United States v. Sotomayor*, No. 1:22-cr-0122 (E.D. Va.) (RDA). The Court also granted the government's motion for a modest downward departure pursuant to U.S.S.G. § 5K1.1, which effectively reduced Sotomayor's guideline range to 24–29.6 months. Over the government's objection, the Court then granted Sotomayor's request for a substantial downward variance despite his involvement in four different schemes and the fact that Sturgis, a cooperator, received a combined sentence of 30 months for her role in two schemes involving smaller bribe amounts.

Here, the defendant's guideline range is analogous (*i.e.*, Level 21 (37-46 months)), and he is less culpable than Sotomayor given the severity and magnitude of Sotomayor's multiple

schemes. The government respectfully submits that the Court should give due consideration to this factor when imposing the defendant's sentence. Sotomayor and the defendant are both deserving of substantial periods of incarceration commensurate with their guideline ranges; indeed, the advisory guideline ranges themselves are designed to avoid sentencing disparities by treating similar offenders in a like manner. However, because the Court has already sentenced Sotomayor to only six months (despite the fact that Sturgis received 30 months), the United States acknowledges that it would be unfair to treat this defendant in a significantly disparate manner without a warranted justification.

### III.    The Federal Sentence Imposed By this Court Should Run Consecutively to Any Sentenced Imposed for the Defendant's Pending, Unrelated State Charges

It is the government's understanding that (1) the defendant intends to plead guilty to some or all of the state-level offenses pending against him (*see* PSR ¶ 79), and (2) he intends to ask this Court to run his federal sentence concurrently with any future state sentence imposed. The government opposes this request and asks that the Court make clear in its final judgment that the federal sentence imposed is to run ***consecutively*** to any sentence imposed for the defendant's pending state charges. The government also requests that the defendant's federal sentence begin after the defendant's anticipated term of imprisonment at the state level.

Pursuant to 18 U.S.C. § 3584(a), this Court may declare that a federal sentence run consecutive or concurrent to a state sentence not yet imposed. *See, e.g.*, *United States v. Setser*, 566 U.S. 231, 236-45 (2012) (holding that federal district courts may order a federal criminal sentence to run after a state criminal sentence that is anticipated but has not yet been imposed); *United States v. Lynn*, 912 F.3d 212, 217 (4th Cir. 2019) (relying on *Setser* and holding that defendant's federal sentence did not have to run concurrently with his anticipated state sentence); *United States v. Wyrick*, 708 F. App'x 786, 788 (4th Cir. 2017); *United States v. Tysor*, 670 F.

App'x 185, 186 (4th Cir. 2016) ("Sentencing judges 'have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences that they impose.'") (quoting *Setser*, 566 U.S. at 236)); *United States v. Obey*, 790 F.3d 545, 549 (4th Cir. 2015) ("*Setser* holds that a district court may run its sentence consecutive to an anticipated state sentence."). The district court is required to consider the 18 U.S.C. § 3553(a) factors in determining whether to run the sentences consecutively or concurrently. *See* 18 U.S.C. § 3584(b). There is also a presumption of consecutive sentences when the sentences—like those at issue here—"are imposed at different times[.]" 18 U.S.C. 3584(a). *See also United States v. Pride*, No. 23-4349, 2023 WL 8231947, at *2 n.1 (4th Cir. Nov. 28, 2023); *Wyrick*, 708 F. App'x at 788.

Likewise, although the advisory guidelines allow for the imposition of a concurrent sentence when the defendant has an anticipated state term of imprisonment, *see* U.S.S.G. § 5G1.3(c), the guidelines make clear that the state offense must constitute relevant conduct to the instant offense of conviction. *Id.* (citing U.S.S.G. § 1B1.3). Here, the defendant's pending state charges do not involve related, relevant conduct pursuant to U.S.S.G. § 1B1.3 and, thus, § 5G1.3(c) does not apply. The pending state charges involve serious sexual abuse allegations that will likely involve substantial terms of imprisonment. These state offenses have nothing to do with the corruption and fraud conduct in this federal matter, and they do not arise from the same operative facts, course of conduct, or underlying scheme. *See, e.g., Wyrick*, 708 F. App'x at 788 (Section 5G1.3(c) inapplicable where anticipated state sentence involved disparate conduct: "Wyrick was facing a separate state sentence for multiple counts of sexual assault, double first-degree rape, double first-degree kidnapping, and burglary that he allegedly committed in 1985, for which he was charged based on DNA testing. This conduct is plainly

12

unrelated to the instant federal offense of illegally possessing a firearm."). Given the disparate nature of the state offenses; the strong need to hold the defendant separately accountable for his serious misconduct at the federal level (pursuant to § 3553(a)'s sentencing factors); and the presumption in favor of consecutive sentences for terms of imprisonment imposed at different times, the Court should explicitly find that the sentence imposed runs *consecutively* with any anticipated state term of imprisonment. The government further submits that the federal sentence should proceed after the completion of the anticipated state sentence.

        Respectfully submitted,

        Jessica D. Aber
        United States Attorney

        Corey R. Amundson
        Chief, Public Integrity Section
        U.S. Department of Justice

By: _/s/ E. Sullivan_
     Edward P. Sullivan
     Special Assistant United States Attorney (LT)
     Senior Litigation Counsel, Public Integrity Section
     Office of the United States Attorney
     2100 Jamieson Avenue
     Alexandria, VA 22314
     Tel: (703) 299-3700
     Fax: (703) 299-3981
     Edward.P.Sullivan@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will serve all counsel of record.

_/s/ E. Sullivan_
Edward P. Sullivan
Special Assistant United States Attorney (LT)

Dated:   December 6, 2023